IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville June 23, 2026

## STATE OF TENNESSEE v. KEITH ANDREW BAGGETT

**Appeal from the Circuit Court for Madison County**
No. 21-26    Joseph T. Howell, Judge

_____

### No. W2025-01176-CCA-R3-CD

_____

The Defendant, Keith Andrew Baggett, appeals from the Madison County Circuit Court's probation revocation of his six-year sentence. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Jeremy Epperson, District Public Defender; Jessica F. Butler (on appeal), Assistant Public Defender – Appellate Division; and Tyler Graham (at hearing), Assistant Public Defender, for the appellant, Keith Andrew Baggett.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 7, 2021, the Defendant pleaded guilty to three counts of theft of property valued at $10,000 or more but less than $60,000, Class C felonies. He received an agreed sentence of six years, suspended to supervised probation. As part of his plea agreement, the Defendant was ordered to attend and to remain in compliance with an intensive day reporting center (DRC) program. The Defendant's supervised probation began upon the completion of his sentence of confinement in two unrelated cases.

On May 18, 2025, the Defendant's probation officer submitted a probation violation report alleging that the Defendant had violated probation rules 8 and 10. The report failed

to indicate whether the alleged violations were technical or non-technical violations. The report's "Details of Alleged Violation(s)" listed the following:

> Rule 8: I will not . . . use or have in my possession illegal drugs.

> Offender was positive for marijuana on 9/19/2024, 10/8/2024, and 10/15/2024.

> Rule 10: I will observe any special conditions as listed below: Intensive Day Reporting Center Program.

> On February 21, 2025, the offender was unsuccessfully discharged from the Jackson Day Reporting Center.

A memorandum from the DRC director and notes from three other DRC staff members were attached to the violation of probation report and detailed the Defendant's disruptive behavior while at the DRC. The documents reflected that the Defendant refused to attend classes, exhibited belligerent and disrespectful behavior, threatened self-harm, and refused to take advantage of outpatient counseling for mental health concerns. Based on the violation of probation report, the trial court issued a warrant on May 27, 2025, stating that the Defendant had allegedly violated probation rules 8 and 10.

On June 16, 2025, the Defendant's probation officer submitted a second probation violation report alleging that the Defendant had been arrested on May 25, 2025, by the Tennessee Highway Patrol (THP) for identity theft, driving under the influence (DUI), driving on a suspended or revoked license, and violation of the financial responsibility law and that the case was pending in the Madison County General Sessions Court. The second report indicated the Defendant had violated probation rules 1, 2, and 8. The report's "Details of Alleged Violation(s)" are as follows:

> Rule 1: I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinance.

> On 5/25/25, the offender was arrested for Identity Theft, DUI 1st offense, Driving on Suspended or Revoked, and Violation of Financial Responsibility.

> Rule 2: I will report all arrests, including traffic violations, immediately, regardless of the outcome, to my Probation Officer.

> The offender was arrested on 5/25/25, and never reported the arrest.

Rule 8: I will not use intoxicants (beer, whiskey, wine, etc.) of any kind to excess . . . .

The offender was arrested for DUI 1st offense on 5/25/25.

The report also stated that the Defendant was guilty of a zero tolerance offense. The THP citations attached to the report reflected that at the time of the Defendant's arrest, the Defendant had a revoked or suspended driver's license, produced no proof of insurance, identified himself to troopers by a false name, had red eyes and a "strong smell of alcohol," and failed field sobriety tests. Based on the second report, on June 18, 2025, the trial court issued a warrant stating that the Defendant had allegedly violated probation rules 1, 2, and 8.

The Defendant denied the violations and requested a hearing. At a July 7, 2025 probation violation hearing, THP Trooper Jerry Tipler testified that he stopped the Defendant at a sobriety checkpoint, where the Defendant identified himself by a false name to avoid arrest for an outstanding warrant. Trooper Tipler said that the Defendant smelled of alcohol, admitted to drinking alcohol earlier in the day, and failed the field sobriety tests that Trooper Tipler administered. Trooper Tipler stated that he arrested the Defendant and that the Defendant's blood alcohol concentration was 0.155 %.

Tennessee Department of Correction Probation and Parole officer Frank Starr, who supervised the Defendant, testified that he filed the violation of probation reports. Mr. Starr recalled that the first probation violation report regarded the Defendant's three failed drug screens for marijuana and behavioral issues at the DRC, resulting in the Defendant's discharge from the program. The second probation violation report regarded the Defendant's DUI arrest and his failure to report it to his probation officer. Mr. Starr read a letter dated February 21, 2025, from the DRC's director explaining the reasons for the Defendant's discharge:

This memo is to serve as a documentation that Keith Baggett has been unsuccessfully discharged from the Jackson Day Reporting Center. The treatment team along with the program director and clinical director have determined that Mr. Baggett's attitude, behavior, disrespect for staff, absences, and process -- progress in the program and failed drug screen illustrates his unwillingness to complete the program. Mr. Baggett has been enrolled into the DRC since September 2023, and as of today, he is still in Phase 2 of the DRC. He has continued to be disrespectful towards the female staff while using profanity on several occasions. Mr. Baggett has been caught with a cell phone in his possession and becomes combative with staff when questioned. Mr. Baggett has been observed often requesting to go to

-3-

the restroom but failed to report back to his assigned program. He has missed fifteen days of unexcused absences and failed to make any of those days up. Finally, Mr. Baggett has had seven failed drug screens, which hampers his ability to move up in phases. The treatment team has requested a VOPR on Mr. Baggett and asking for a violation that he be sent back to the courts for his failure to successfully complete the Day Reporting Center as court ordered.

The Defendant testified that he had not yet been convicted of the new charges and that he wanted to attend a long-term rehabilitative program to address his substance addiction. The Defendant said that his behavioral issues at the DRC resulted from "a mental breakdown" that led to renewed substance use. The Defendant stated that he was willing to attend a long-term inpatient facility and that he would be courteous and comply with the program's requirements. The Defendant said that he would avoid new criminal charges and pass all his drug screens if allowed to stay on probation.

On cross-examination, the Defendant testified that when he was arrested on May 25, 2025, he identified himself by a false name to avoid being arrested for an outstanding warrant. The Defendant admitted that he had been drinking alcohol on May 25 and that he was guilty of DUI. The Defendant acknowledged that he had a substance addiction, for which he needed long-term treatment, and that this was his first probation violation. The Defendant recognized that he was discharged from the DRC because of his non-compliant and disruptive behavior and stressed his need for treatment at a facility where he would not have access to drugs or alcohol.

The State argued that the Defendant admitted that he violated the terms of his probation by failing drug screens and by admitting his guilt of DUI. The State argued that the Defendant failed to take advantage of the DRC's rehabilitative program, could not comply with the requirements of probation, and should serve his sentence in confinement. The Defendant requested that the trial court place him into a long-term inpatient rehabilitative program to address his substance addiction.

The trial court considered the Defendant's presentence report, detailing his criminal history. The court also noted that the DRC provided the Defendant with information regarding outpatient counseling for his mental health concerns. The court examined DRC staff notes attached to the first violation report and found that the Defendant's behavior at the DRC included "disruptive actions to self-harm threats as a means to manipulate the situation." The court concluded that the Defendant had "squandered" his opportunity for rehabilitative help. The court revoked the Defendant's probation and ordered him to serve his sentence. This appeal followed.

The Defendant contends that the trial court abused its discretion by failing to make findings that reflect the appropriate consequence for the probation violation. The Defendant acknowledges that the court had the authority to revoke his probation in full as a result of his DUI. He, however, argues that the court erred by basing its revocation decision on factors relating only to his discharge from the DRC. The State counters that the court did not abuse its discretion by revoking the Defendant's probation and that the court considered relevant factors to support its revocation decision.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan*, 641 S.W.3d at 759. When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Id*. at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58. In determining a consequence for a violation, factors among which a trial court may consider include "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Id*. at 759 n.5. "'[T]he consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation.'" *State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024) (quoting *State v. Gregory Sean Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023)).

Tennessee Code Annotated section 40-35-311 classifies violations into "technical" and "non-technical" violations. A technical violation "means an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision

-5-

sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* § 40-35-311(g) (2025). "[T]he trial judge shall not revoke a defendant's probation and suspension of sentence for a felony offense . . . based upon one (1) instance of technical violation or violations." *Id.* § 40-35-311(d)(2). When a probationer has committed more than one instance of a technical violation, the statute provides as follows:

> (e)(1) If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation . . .by engaging in conduct that is a second or subsequent instance of a technical violation pursuant to subdivision (d)(2), then the trial judge may temporarily revoke the probation . . . and:
>
>> (A) Impose a term of incarceration not to exceed:
>>
>>> (i) Fifteen (15) days for a first revocation;
>>> . . . .
>>>
>>> (iv) The remainder of the sentence for a fourth or subsequent revocation; or
>>
>> (B) Resentence the defendant for the remainder of the unexpired term of a sentence of probation that includes the condition of participating in a community-based alternative to incarceration . . . provided, that the violation of probation and suspension is a technical violation and does not involve the commission of a new offense.

*Id*. § 40-35-311(e)(1). Thus, "when a defendant is on probation for a felony offense and commits a technical violation of probation, the trial court's authority to order an incarcerative sanction is restricted based on the number of previous 'revocations.'" *Rand*, 696 S.W.3d at103.

For non-technical probation violations, a trial court has other options. After revoking a defendant's probation on a non-technical violation, the court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution. T.C.A. §§ 40-35-308(a), (c) (2025), -310 (2025), -311(e)(2).

The record reflects that the Defendant was on probation for three felony offenses. The May 27, 2025 probation violation warrant charged the Defendant with failing drug screens and being discharged for failing to complete the DRC program. The June 18, 2025

-6-

warrant charged that the Defendant violated the conditions of his probation as a result of his arrest for DUI, a Class A misdemeanor. *See id.* § 55-10-401. DUI is a non-technical probation violation, for which the trial court may order the Defendant to serve his sentence. *See id.* § 40-35-311(g). At the revocation hearing, the Defendant admitted that he committed both technical and non-technical violations and does not challenge this issue on appeal. Rather, the issue the Defendant asks that we review is whether the court placed sufficient findings and reasons on the record for its decision as to the consequence of the violations. *See Dagnan*, 641 S.W.3d at 757-58.

The record reflects that the trial court considered the Defendant's criminal history and his character, both of which are specific and appropriate factors when determining whether to revoke the Defendant's probation. *See Dagnan*, 641 S.W.3d at 759 n.5. The court considered the Defendant's criminal history contained in the presentence report, documentation from the DRC describing the Defendant's disruptive behavior, and the Defendant's failure to seek additional outpatient counseling for his mental health concerns. The court also considered the Defendant's amenability to continued supervision by examining the nature of the Defendant's behavior at the DRC. The court gave great weight to the Defendant's failure to take advantage of the DRC's program and available outpatient counseling for his behavioral issues. The court concluded that the Defendant was not a good candidate for inpatient treatment because of his disruptive behavior at the DRC. We reject the Defendant's argument that the court's consideration of his behavior at the DRC was irrelevant to the court's decision to order the Defendant to serve his sentence as a result of his DUI. The court's decision reflects its implicit determination that the Defendant's DUI arrest was the culmination of the Defendant's inability or unwillingness to comply with the DRC's programs to address the Defendant's substance addiction "problem." We conclude that the court made appropriate findings and did not abuse its discretion by revoking the Defendant's probation and ordering him to serve his sentence in confinement.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.


**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE

-7-